UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CINDY R.[1],

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

Civil Action No. 24-11444

David R. Grand
United States Magistrate Judge[2]

## OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 8, 10)

Plaintiff Cindy R. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Currently before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 8) and the Commissioner's Motion for Summary Judgment (ECF No. 10), as well as the administrative record (ECF No. 5).

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act during the relevant time

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c). (ECF No. 7).

period is not supported by substantial evidence.  Accordingly, the Commissioner's Motion for Summary Judgment **(ECF No. 10)** is **DENIED**, Plaintiff's Motion for Summary Judgment **(ECF No. 8)** is **GRANTED** to the extent it seeks remand, and pursuant to sentence four of 42 U.S.C. § 405(g), this case is **REMANDED** for further proceedings consistent with this Opinion and Order.

## I. Background

Plaintiff filed her application on November 2, 2021, and alleged a disability onset date of December 18, 2018, at which time she was 47 years old.  (PageID.103, 198-200).[3] At 5'7" tall, she weighed approximately 120 pounds during the relevant time period. (PageID.157).  She lives in a house with her family.  (PageID.256).  Plaintiff has no past relevant work.  (PageID.55).  Plaintiff's alleged disabling conditions include fibromyalgia, fatigue, mast cell activation syndrome, medial arcuate ligament syndrome, depression, anxiety, idiopathic postprandial syndrome, small intestinal bacterial overgrowth/IBC, mold illness, and chronic headache.  (PageID.103).

After Plaintiff's application for DIB was denied at the initial level on September 27, 2022 (PageID.127), and upon reconsideration on December 28, 2022 (PageID.138), she timely requested an administrative hearing, which was held on May 22, 2023, before ALJ Laura Chess (PageID.62-94).  Plaintiff, who was represented by attorney Heidi Walkon, testified at the hearing, as did vocational expert ("VE") Pauline McEachin.  (*Id.*).  On July 26, 2023, the ALJ issued a written decision finding that Plaintiff is not disabled under the

---

[3] Standalone citations to "PageID. __" are all to the administrative transcript in this case, which can be found at ECF No. 5-1.

Act. (PageID.44-56). On April 24, 2024, the Appeals Council denied review. (PageID.27-29). Plaintiff timely filed for judicial review of the final decision on May 31, 2024. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

## II.     The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least

3

> twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not disabled under the Act.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of her application on December 18, 2018. (PageID.46).  At Step Two, the ALJ found that Plaintiff had severe impairments of fibromyalgia, mast cell activation syndrome, celiac artery compression syndrome, irritable bowel syndrome (IBD), vitamin deficiency, neuropathy, depressive disorder, and anxiety disorder.  (PageID.46-47).  At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (PageID.47-50).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations:

> The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can frequently balance per the Selected Characteristics of Occupations. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant can frequently, not constantly, reach overhead with the bilateral upper extremities. The claimant can have no concentrated exposure to extreme cold, extreme heat, wetness, or vibration. There can be no exposure to moving mechanical parts or work at high exposed places. The claimant can remember and carry out simple instructions. The claimant can tolerate occasional changes in a routine work setting.

(PageID.50).

At Step Four, the ALJ found that Plaintiff has no past relevant work under 20 C.F.R. § 404.1565. (PageID.54-55). At Step Five, the ALJ found, based in part on the VE's testimony, that given Plaintiff's age, education, work experience, and RFC, she was capable of performing unskilled light work as a general office clerk (250,000 jobs nationally), information clerk (180,000 jobs), and inspector (180,000 jobs), and sedentary work as a general office clerk (150,000 jobs), inspector (130,000 jobs), and information clerk (160,000 jobs). (PageID.55-56). Thus, the ALJ concluded that Plaintiff was not disabled under the Act. (PageID.56).

### III. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has

5

made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be

6

affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### IV. Analysis

In her motion for summary judgment, Plaintiff argues that remand is required because, "when rejecting Plaintiff's allegations stemming from her fibromyalgia, the ALJ improperly relied solely on the objective medical evidence." (ECF No. 8, PageID.1062).[4] The Sixth Circuit has recognized the difficulty that fibromyalgia presents for disability determinations:

> In stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in [fibromyalgia] patients.

*Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988); *see Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) (". . . fibromyalgia patients manifest normal muscle strength and neurological reactions and have a full range of motion.") (quotation omitted). Accordingly, because fibromyalgia patients generally do not present "objectively alarming signs," the Sixth Circuit has held that the "nature of

---

[4] Plaintiff also argues that the ALJ erred by failing to properly evaluate the opinion Dr. Christy Werth, D.O., as well as the opinions of state agency psychological consultants Dr. Bruce Douglass, Ph.D., and Dr. Kathy Morrow, Ph.D. (ECF No. 8, PageID.1067-76). Because the Court is recommending remand on other grounds, it need not discuss in detail the merits of these arguments. On remand, however, the ALJ should give full and fair consideration to these issues.

7

fibromyalgia itself renders . . . an *over-emphasis* upon objective findings inappropriate." *Rogers*, 486 F.3d at 243, 248 (emphasis added); *see also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861 (6th Cir. 2011) ("[T]he ALJ's rejection of [] treating physicians' opinions as unsupported by objective evidence in the record obviously stems from [a] fundamental misunderstanding of the nature of fibromyalgia."). After careful review, the Court concurs with Plaintiff that the ALJ erred in her handling of Plaintiff's fibromyalgia by over-emphasizing objective findings from her medical appointments and failing to properly weigh those findings against Plaintiff's subjective complaints of pain and other record evidence.

Here, it is undisputed that the ALJ found that Plaintiff had a severe impairment of fibromyalgia. In assessing Plaintiff's subjective complaints of pain and physical limitations stemming from her fibromyalgia, the ALJ stated as follows:

> In terms of the claimant's alleged physical impairments, treatment records show that although the claimant has some limitations from these impairments, these limitations are not disabling. An April 2019 CT scan of the claimant's abdomen showed cholelithiasis but was otherwise unremarkable. On May 31, 2019, the claimant underwent an image-guided celiac plexus block. She reported full transient relief of the MALS pain for a period of five hours following the block, making her a candidate for surgery. Blood tests show the claimant's C-reactive protein and sedimentation levels were within normal limits. A July 2021 right upper quadrant abdominal ultrasound was unremarkable.
>
> During physical examinations, the claimant had tenderness to palpation of the cervical and lumbosacral spine. She had gluteal tenderness. There were no muscle spasms. Straight leg raising was negative. She generally had full range of motion throughout but occasionally had decreased range of motion in the lumbar spine. The claimant's abdomen was generally soft. She occasionally had tenderness in the abdomen and epigastric area. There was no rebound tenderness. Bowel sounds were normal. Cranial nerves II-XII were grossly intact. Peripheral pulses were intact. Muscle strength was 5/5. Muscle tone

was normal. Deep tendon reflexes were intact and symmetric. Sensation was intact. There was no clubbing or edema. The claimant ambulated with a normal gait. Her coordination was within normal limits. She was able to heel and toe walk. The claimant takes Tramadol for pain and Cromolyn, antihistamines, and Singulair for the mast cell activation syndrome. She reported her symptoms are stable. These findings are not consistent with the claimant's complaints of disabling symptoms, but rather tend to support the limitations in the residual functional capacity of light exertional work with the additional limitations indicated.

(PageID.52).

The analysis above reflects that the ALJ's articulated reasons for discounting Plaintiff's subjective statements were almost entirely based on objective findings, which fails to comport with the Sixth Circuit's clear directive that "given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important," and "[an] over-emphasis upon objective findings [is] inappropriate." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). As Plaintiff correctly argues, the ALJ primarily points to objective medical evidence in the form of CT scans, ultrasounds, blood tests, and physical exams indicating normal muscle strength, coordination, gait, range of motion, and sensation, to conclude that such "findings are not consistent with [Plaintiff's] complaints of disabling symptoms." (PageID.52). However, as the Sixth Circuit has emphasized, placing an undue focus on objective medical evidence reflects a "fundamental misunderstanding of the nature of fibromyalgia," as "fibromyalgia patients . . . typically manifest normal muscle strength and neurological reactions and have a full range of motion." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861 (6th Cir. 2011) (quotations omitted); *see also Lucas v. Comm'r of Soc. Sec.*, No.

9

18-10087, 2019 WL 1117927, at *6 (E.D. Mich. Feb. 21, 2019) ("Indeed, the Sixth Circuit has issued strong opinions on this point, reversing ALJ's findings because of their undue emphasis on the lack of objective evidence. Test results showing normal strength, gait, or range of motion are not convincing evidence of lack of disability in these kinds of [fibromyalgia] cases."). While observations of Plaintiff's ability to perform certain physical movements in exams can be relevant to assessing the physical capacity she demonstrated during those office visits, *see, e.g., Cooper v. Comm'r of Soc. Sec*, 2014 WL 4606010, at *10 (recognizing that physician's clinical notes and observations are still critical in assessing the level of impairment caused by fibromyalgia), the law discussed above makes clear that, where the claimant suffers from fibromyalgia, it is error to "over-emphasize" those observations while failing to meaningfully weigh them against the plaintiff's subjective complaints and other record evidence that may support a finding of disability. *See Rogers*, 486 F.3d at 248. In this case, the ALJ's articulated reasons for discounting Plaintiff's subjective statements concerning her fibromyalgia reflect such an error.

Indeed, other than inconsistencies with the objective medical findings, the ALJ's only other articulated reason for discounting Plaintiff's subjective complaints were that Plaintiff "takes Tramadol for pain" and "reported her symptoms are stable." (PageID.52). But, as discussed below, these statements amount to precisely the type of "brief analysis" the Sixth Circuit has held is "inappropriate" when assessing the "unique evidentiary difficulties associated with the diagnosis and treatment fibromyalgia." *Rogers*, 486 F.3d at 245, 248.

To start, the ALJ's cursory statement that Plaintiff "takes Tramadol for pain" wholly fails to "discuss or consider the lengthy and frequent course of medical treatment or the nature and extent of that treatment, the numerous medications [Plaintiff] has been prescribed, the reason for which they were prescribed, or the side effects [Plaintiff] testified she experiences from those medications." *Id.* at 248. This is particularly true given that the record in this case contains significant evidence documenting that Plaintiff could not tolerate many forms of treatment normally used for fibromyalgia. For example, treatment records with Dr. Teresa Griffith, M.D., on October 26, 2021, expressly indicate that Plaintiff was "sensitive to most medications used to treat fibromyalgia that she has tried in the past including Lyrica, Cymbalta and Flexeril," that she could no longer tolerate "multi-vitamins, amino acids, and minerals she obtained from a chiropractor . . . to help her fibromyalgia," that she "previously tried acupuncture which worsened her pain," and that she saw a "neurologist who did not believe they had anything left to offer except a nerve conduction test." (PageID.496). After diagnosing Plaintiff with fibromyalgia, Dr. Griffith stated:

> At this time I find nothing specific I can suggest for her symptoms as they are quite diffuse in nature. ***She has tried a number of therapies [that] typically would be appropriate in this scenario but have produced untoward reactions.*** She has also tried acupuncture and diet elimination. She has been tested for celiac disease which was negative. Recommended she continue vitamin D supplementation and have periodic vitamin D level checks as low vitamin D can exacerbate her symptoms. If symptoms don't improve with functional medicine recommended a possible referral to the University of Michigan, allergy and immunology***, otherwise I have nothing specific further to offer from the pain clinic to help her symptoms. She is unable to tolerate a number of medications typically used for fibromyalgia.*** She could possibly try aqua therapy on a as needed basis. ***Acupuncture worsened***

11

> ***her symptoms***. I suggested perhaps adding in a referral to Dr. Kazmers is with rheumatology in Petoskey as I know she does see a number of unusual cases however she has gone to a direct specialty care type practice where she does not accept insurance and patient did not feel this was an option for her at this time.

(PageID.504) (emphasis added); *see also* (PageID.449 (Patient Questionnaire on August 12, 2021, stating, "I was unable to tolerate any meds given to me for fibromyalgia and depression. After just a few days of taking the med I would get increased pain and muscle cramping.")

Treatment notes more than a year later on January 26, 2023, continue to document her inability to tolerate most fibromyalgia medication, as Dr. Christy Werth, D.O., similarly noted that Plaintiff "[h]as tried other medications but [is] not able to tolerate due to side effects" and "not able to tolerate medications due to increased pain, fatigue, GI side effects." (PageID.1023). Moreover, even those treatment records documenting Plaintiff's use of "tramadol for pain as needed" largely reflect that, despite its use, Plaintiff still continued to experience "[e]lectric pain in the upper and lower extremities," fatigue, and myalgias in her musculoskeletal system. (PageID.1023-24) (treatment record on October 25, 2022); (*see also, e.g.*, PageID.820 (October 2021 progress note stating that, even with tramadol, "patient's pain is widespread and generalized, worse in her hands and feet," "[t]his is a chronic problem," "patient describes [] pain as a prickly, electrical shock," the pain "occur[s] daily" and is "consistent throughout the day," and "patient is unable to perform [her] normal activities without pain"); PageID.1000 (April 2022 office visit documenting "neuropathy pain," "burning . . . mostly in feet, legs, hands," and "constant" muscle aches and fatigue despite using tramadol twice a day); PageID.968 (September 2022 medical report documenting that Plaintiff "reported pain today in her entire body and

hips, shoulders and neck today" even while on tramadol)).

The same analysis applies to the ALJ's cursory statement that Plaintiff "reported her symptoms are stable." As an initial matter, to the extent treatment records note that Plaintiff's fibromyalgia was "stable," this does not necessarily mean that her fibromyalgia did not cause significant symptoms limiting her functional capacity. To the contrary, courts have held that "[a] person can have a condition that is both 'stable' and disabling at the same time." *Hopkins v. Comm'r of Soc. Sec.*, No. 1:07-CV-964, 2009 WL 1360222 (S.D. Ohio May 14, 2009) ("[T]he fact that Dr. Mattison assessed plaintiff's MS as "stable" is not inconsistent with his finding that her functional capacity is nonetheless limited, and does not mean that plaintiff did not experience the fatigue, decreased stamina, frequent falls, headaches, pain, and other symptoms noted throughout the record which contributed to her limited [] functional capacity."); *see also Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). In this case, the Court cannot conclude from a fair reading of the ALJ's decision that she properly considered that even "stable" fibromyalgia could simultaneously cause significantly debilitating symptoms, as appears to be reflected in the record evidence in this case.

For instance, treatment notes between February 2019 through September 2021, reflect that Plaintiff consistently reported chronic muscle pain, myalgias, and fatigue even while her fibromyalgia was noted as "stable." (*See, e.g.*, PageID.760 ("Still with chronic muscle pain" on February 6, 2019); PageID.764 ("Does continue to have myalgias . . . Continues to have fatigue and muscle pain" on May 21, 2019); PageID.783 ("Positive for myalgias and extremity pain" on March 3, 2020); PageID.787 (same on June 10, 2020);

13

PageID.792 (same on September 24, 2020); PageID.796 (Positive for fatigue and myalgias on December 17, 2020); PageID.801 ("Patient states pain usually 5/10 with myalgias" on March 25, 2021); PageID.805 ("Leg pain" with "burning and tingling x2 weeks," fatigue, myalgias, extremity pain, and numbness on June 3, 2021); PageID.814 ("Patient continues to struggle with myalgias, fatigue, and 'brain fog'" on September 29, 2021).  By January 6, 2022, Plaintiff continued to report myalgias and "muscle cramping and nerve pain worse in the lower extremities." (PageID.829).  An appointment with Dr. Keri Topouzian, D.O., on April, 1, 2022, reflects that Plaintiff similarly reported "neuropathy pain," "burning" mostly in "feet, legs, hands," "constant" muscle aches and fatigue, and "lots of pain," despite being on a prescription of tramadol for fibromyalgia.  (PageID.1000-01).  And, while Plaintiff was noted on July 21, 2022, to be "[o]verall doing well" with "stable" fibromyalgia pain" and "[u]sing tramadol as needed" (PageID.983), a subsequent psychiatric medical report from just two months later on September 22, 2022, reflects that Plaintiff reported pain "in her entire body and hips, shoulders, and neck today," her "nerve pain is off and on all day and night" and "described as a 6 on a scale of 0-10 with 10 being pain requiring ER treatment," she stated that "today was a typical day for her pain and denied pain free days," she has "been in pain for 15 years," and most medications "increased [her] nerve pain and body aches" since she developed fibromyalgia. (PageID.968).  By October 25, 2022, Plaintiff was noted as experiencing "diffuse muscle aches and 'electrical pains' in extremities" despite "[u]sing tramadol for pain as needed," and was assessed with "worsening symptoms" of fibromyalgia such that she needed to "[i]ncrease tramadol to every 8 hours as needed." (PageID.1021-22).  On January 26, 2023,

14

even though her fibromyalgia was "stable," Plaintiff continued to report myalgias, fatigue, and electric pain in the upper and lower extremities, and that she was unable to tolerate medications other than tramadol "due to increased pain, fatigue, GI side effects." (PageID.1023-24).[5]

---

[5] The record also contains a plethora of psychotherapy notes consistently indicating that, although her fibromyalgia was generally noted as "stable" in treatment notes with Dr. Werth, Plaintiff experienced daily chronic pain causing significant issues and limitations for her. (*See, e.g.*, PageID.555 (noting on August 28, 2020, that Plaintiff is "seeking counseling because of depression and anxiety due to chronic pain"); PageID.558 (same on August 31, 2020); PageID.567 (noting on September 11, 2020, that "patient's experience of chronic pain has led to feelings of depression and anxiety."); PageID.571 (noting on October 2, 2010, that "patient's chronic pain/illness has interfered with her daily functioning and significantly limits her physical activities"); PageID.574 (noting on October 9, 2020, that "patient has significantly decreased or stopped activities related to work, household chores, socialization, exercise, and sexual pleasure because of pain," and "the termination of constructive activity because of her pain"); PageID.584 (noting on November 6, 2020, that "patient has begun to realize that her chronic pain has caused her to give up so much of her life"); PageID.598 (noting on January 28, 2021, that "patient's entire life has been negatively affected by her chronic pain," and "patient has not been able to discover ways to manage or decrease her pain effectively"); PageID.600 (noting on February 11, 2021, that "[a]lthough patient is under treatment for her chronic medical problems, she is not showing signs of improvement"); PageID.613 (noting on April 9, 2021, that "patient presented with a multitude of physical complaints that have an unknown cause and have caused her to change her life to accommodate these complaints. The patient is so pain focused that she is unable to carry on the responsibilities of day-to-day living resulting in an increase in anxiety and depression related symptoms."); PageID.622 (noting on June 11, 2021, that "patient's pain has increased to the point that she is now unable to concentrate or focus on daily tasks"); PageID.625 (noting on June 25, 2021, that the "frequency and intensity of the patient's physical and emotional complaints have increased"); PageID.638 (noting on August 20, 2021, that "patient reported that she feels angry and frustrated due to her medical conditions"). Indeed, despite assessing Plaintiff's fibromyalgia as "stable," Dr. Werth opined that Plaintiff nonetheless continued to suffer from "fatigue, myalgias, pains in the hands/feet," "intermittent shooting pains in extremities," and "chronic diffuse muscle aches" such that, even with tramadol for pain control, Plaintiff would have "good days" and "bad days," be absent from work "[a]bout 4 days per month," and have symptoms severe enough to occasionally interfere with attention and concentration needed to perform even simple work tasks. (PageID.1045-47). While the ALJ did make a vague finding that Dr. Werth's opinion "is generally not consistent with the medical evidence of record," and broadly referenced Exhibit "10F," which comprises 125 pages of psychotherapy records, "it is not enough for an ALJ to recite many 'details' from the records; rather, she must ensure that the evidence is considered fairly and in its entirety," *Hartman v. Comm'r of Soc. Sec.*, No. CV 18-12887, 2019 WL 3424973, at *11 (E.D. Mich. July 2, 2019), *report and recommendation adopted*, No. 18-12887, 2019 WL 3412891 (E.D. Mich. July 29, 2019), which includes "provid[ing] an adequate and logical bridge between

Based on the above, the ALJ's sparse and general characterization that Plaintiff "takes Tramadol for pain" and "reported her symptoms are stable" fails to reflect sufficient consideration and weighing of Plaintiff's repeated complaints concerning chronic pain, myalgias, and fatigue that were well-documented throughout the numerous treatment notes in the record, as well as other record evidence. In other words, as the Sixth Circuit determined in *Rogers*, "[t]he decision in this case fails to 'contain specific reasons for the finding on credibility, supported by the evidence in the case record,' nor is it 'sufficiently specific to make clear to the individual and to any subsequent reviews the weight the adjudicator gave to [Plaintiff's] statements and the reasons for that weight." *Rogers*, 486 F.3d at 249. Accordingly, the Court finds that the ALJ's handling of Plaintiff's subjective complaints with respect to her fibromyalgia is not supported by substantial evidence, and that remand is required so that the ALJ may engage in a more thorough evaluation and weighing of the record evidence related to Plaintiff's fibromyalgia and its impact on her ability to work. *See id.* at 248-49.

V. **Conclusion**

For the foregoing reasons, the Commissioner's Motion for Summary Judgment **(ECF No. 10)** is **DENIED**, Plaintiff's Motion for Summary Judgment **(ECF No. 8)** is **GRANTED** to the extent it seeks remand, and pursuant to sentence four of 42 U.S.C. § 405(g), this case is **REMANDED** for further proceedings consistent with this Opinion and

---

the evidence and the result." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829-30 (E.D. Mich. 2017). Thus, on remand, the ALJ shall meaningfully consider the impact of records like the foregoing on Plaintiff's functional limitations.

16

Order.

**IT IS SO ORDERED.**

Dated: July 2, 2025            s/David R. Grand
Ann Arbor, Michigan            DAVID R. GRAND
                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 2, 2025.

                                                      s/Eddrey O. Butts
                                                      EDDREY O. BUTTS
                                                      Case Manager